In re: **VIDEO DEPOT, LTD.,** Debtor.

Kenneth **SCHAFER,** Plaintiff–Appellee,

v.

**LAS VEGAS HILTON CORPORATION,** Defendant–Appellant.

No. 96–35283.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 8, 1997.

Decided Nov. 5, 1997.

Scott M. Mahoney, Las Vegas, Nevada, for defendant-appellant.

James L. Day, Bush, Strout, & Kornfeld, Seattle, Washington, for plaintiff-appellee.

Before: WRIGHT, D.W. NELSON, and KOZINSKI, Circuit Judges.

D.W. NELSON, Circuit Judge:

Kenneth Schafer, the trustee of Video Depot, Ltd., brings this fraudulent conveyance action to recover the proceeds of a cashier's check purchased by Video Depot and paid to the Las Vegas Hilton in partial satisfaction of gambling debts incurred by Jeffrey Arlynn, Video Depot's principal. Hilton appeals the district court's decision affirming the bankruptcy court's judgment in favor of the trustee. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Most of the relevant facts are not in dispute. Jeffrey Arlynn was the president of Video Depot, a consumer electronics company. Arlynn controlled virtually all of Video Depot's operations.

Arlynn was also an active gambler. Between 1985 and 1990, he made approximately 60 trips to the Las Vegas Hilton. Initially, Arlynn gambled on funds he brought with him, or against credit that Hilton extended to him for the duration of each individual trip. In 1987, however, Arlynn obtained a perma-

nent line of credit with Hilton in the amount of $50,000, which was increased to $75,000 in 1990.

Prior to 1990, Arlynn regularly repaid his losses in full either at the end of each stay or at the beginning of the next trip. While he occasionally retained a balance, the balance was always substantially less than his credit limit. In addition, Arlynn carefully controlled the size of his accumulated credit losses. Until 1990, Arlynn's balance only twice exceeded $100,000 and never exceeded $125,000.

In early May of 1990, however, Arlynn incurred a debt of $225,000, and he did not make a payment towards this debt before he left Las Vegas. On June 15, Video Depot purchased a cashier's check payable to Hilton in the amount of $65,000. The check clearly indicated that Video Depot was the purchaser. When Arlynn returned to Las Vegas on June 16, he gave two checks to Hilton: the $65,000 cashier's check from Video Depot, and a personal cashier's check in the amount of $10,000. Arlynn had never before presented either a cashier's check or a check purchased by Video Depot to cover his gambling losses.

Video Depot commenced bankruptcy proceedings on September 14, 1990, and the trustee was appointed shortly thereafter. The trustee then filed suit against Hilton to recover the proceeds of the $65,000 cashier's check. After an initial round of litigation, both parties stipulated that the check was a fraudulent transfer within the meaning of 11 U.S.C. § 548, and the bankruptcy court proceeded to determine whether Hilton was an initial transferee under 11 U.S.C. § 550(a) or a subsequent transferee lacking good faith knowledge of the voidability of the transfer within the meaning of 11 U.S.C. § 550(b).

Before trial, the bankruptcy court partially granted Hilton's motion for summary judgment, determining that Hilton was not the initial transferee. Trial was held on Hilton's asserted section 550(b) defense. The court thereafter determined that cause existed to reconsider its oral grant of summary judgment. In a letter to the parties, the bankruptcy judge requested supplemental briefing on the initial transferee issue "[t]o the extent counsel feel it is necessary." The

judge also inquired whether either side felt it necessary to introduce additional evidence if the court reopened the initial transferee issue. Both parties declined to submit additional evidence.

The bankruptcy court determined that Hilton was the debtor's initial transferee and therefore was strictly liable to the bankruptcy estate under 11 U.S.C. § 550(a)(1). The court also determined that, even if it were a subsequent transferee, Hilton had failed to establish a defense under 11 U.S.C. § 550(b). The district court affirmed on the ground that Hilton was an initial transferee and consequently did not consider the section 550(b) issue. Hilton now appeals on both grounds.

## STANDARD OF REVIEW

■ In an appeal of a district court decision reviewing a decision of the bankruptcy court, this court does not defer to the district court. *Friedkin.v. Sternberg, (In re Sternberg)*, 85 F.3d 1400, 1404 (9th Cir.1996). We review the bankruptcy court's conclusions of law de novo and must uphold its findings of fact unless they are clearly erroneous. *Feder v. Lazar (In re Lazar)* 83 F.3d 306, 308 (9th Cir.1996).

## ANALYSIS

The central issue before us is whether Hilton was the initial transferee of the $65,000 cashier's check purchased by Video Depot.

### The Statutory Scheme

■ The parties have stipulated that the $65,000 payment to Hilton was a fraudulent transfer within the meaning of 11 U.S.C. § 548. Once a transfer has been determined to be voidable as a fraudulent conveyance under section 548, the trustee of the debtor may recover it from either

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a). The distinction between the two, however, is a critical one. The trustee's right to recover from an initial

transferee is absolute. *See Danning v. Miller (In re Bullion Reserve)*, 922 F.2d 544, 547 (9th Cir.1991). On the other hand, the trustee may not recover from a subsequent transferee if the subsequent transferee accepted the transfer for value, in good faith, and without knowledge of the transfer's voidability. 11 U.S.C. § 550(b). Subsequent transferees therefore have a defense unavailable to initial transferees.

The purpose of this scheme is to protect creditors "from last-minute diminutions of the pool of assets in which they have interests," while at the same time to guard against "the waste that would be created if people either had to inquire how their transferors obtained their property or to accept a risk that a commercial deal would be reversed for no reason they could perceive at the time." *Bonded Fin. Servs., Inc. v. European American Bank*, 838 F.2d 890, 892 (7th Cir.1988). Section 550 balances these two goals by imposing on the initial transferee the "burden of inquiry and the risk if the conveyance is fraudulent." *Id.* While the initial transferee is in the best position to monitor the transaction, "subsequent transferees usually do not know where the assets came from and would be ineffectual monitors if they did." *Id.* at 892–93.

In this case, the bankruptcy court determined, and the district court agreed, that Hilton was the initial transferee. On appeal, Hilton makes two arguments to the contrary. First, Hilton contends that Arlynn, not Hilton, was the initial transferee because Arlynn controlled Video Depot and directed that the funds be transferred to Hilton. Alternatively, Hilton argues that Arlynn was the initial transferee because Video Depot's ledger appears to indicate that the cashier's check was a "loan" to Arlynn. We address each of these arguments in turn.

### I. *Arlynn's Control over Video Depot*

While the Bankruptcy Code does not define "transferee," it is widely accepted that a transferee is one who, at a minimum, has "'dominion over the money or other asset, the right to put the money to one's own purposes.'" *In re Bullion*, 922 F.2d at 548 (quoting *Bonded Fin. Servs.*, 838 F.2d at 893). The bankruptcy court determined that Arlynn did not have dominion over the $65,-000. The court reasoned that although Arlynn controlled Video Depot's operations and arranged for the check to be issued, the check was a direct transfer from Video Depot to Hilton. Once the check was issued, Arlynn no longer had legal control over the funds, even if he retained physical control over them. Arlynn therefore did not have the right to use the money for any other purpose than to give it to Hilton. Hilton maintains that Arlynn had dominion over the $65,000 because he was Video Depot's principal and, in that capacity, directed Video Depot to purchase the cashier's check.

The bankruptcy courts are split on the question of whether the principal of a debtor corporation necessarily is the initial transferee of corporate funds used to satisfy a personal obligation. *Compare General Electric Capital Auto Lease, Inc. v. Broach (In re Lucas Dallas, Inc.)*, 185 B.R. 801, 809 (9th Cir.BAP1995) (holding that "the principal of a corporate debtor does not become a 'transferee' by the mere act of causing the debtor [to] make a fraudulent transfer"); *Richardson v. FDIC (In re M. Blackburn Mitchell Inc.)*, 164 B.R. 117, 127 (Bankr.N.D.Cal.1994) (holding that principal who caused debtor to issue cashier's check to satisfy personal obligation was not initial transferee); *with Ross v. United States (In re Auto–Pak, Inc.)*, 73 B.R. 52, 54 (D.D.C.1987) (concluding that principal of corporation was initial transferee when principal arranged for corporation's purchase of cashier's check to satisfy financial obligations independent of corporation); *Still v. American Nat'l Bank & Trust Co. (In re Jorges Carpet Mills, Inc.)*, 50 B.R. 84, 85 (Bankr.E.D.Tenn.1985) (same); *see also Robinson v. Home Savings of America (In re Concord Senior Housing Foundation)*, 94 B.R. 180, 183 (Bankr.C.D.Cal.1988) (holding that agent of corporation who used corporate funds to secure personal loan was initial transferee). Hilton urges us to reject the rule set forth in *Lucas Dallas* and *Mitchell* and instead to follow the *Auto–Pak* line of cases.

Although the Ninth Circuit has not squarely addressed this issue, all of the circuit courts that have considered it have adopted the same approach as the *Lucas Dallas* and

*Mitchell* courts. In *Nordberg v, Arab Banking Corp.* (*In re Chase & Sanborn Corp.*), 904 F.2d 588 (11th Cir.1990), on which the bankruptcy court in the present case relied, the Eleventh Circuit held that a bank was the initial transferee of loan payments made by a corporation even though the corporation's principal directed the transfer and the loan was the principal's private debt. *Id.* at 599–600. The court determined that "the extent of [the principal's] control over [the corporation] generally, and over [the corporation's] actions in transferring the disputed funds to [the bank] in particular, is entirely irrelevant to the 'initial transferee' issue." *Id.* at 598.

Since the bankruptcy court's decision, two other circuits, citing *Lucas Dallas* and the district court's opinion in this case, also have concluded that a principal who directs a debtor corporation to issue a certified check to pay for a personal debt is not an initial transferee. *See Bowers v. Atlanta Motor Speedway, Inc.* (*In re Southeast Hotel Properties Limited Partnership* ), 99 F.3d 151 (4th Cir.1996); *Rupp v. Markgraf,* 95 F.3d 936 (10th Cir.1996). These courts have held that a principal or agent does not have "dominion and control" over funds unless he or she has *"legal* dominion and control," in other words, the "right to put those funds to one's own purpose." *Bowers,* 99 F.3d at 155 (emphasis in original); *see also Rupp,* 95 F.3d at 941. The mere power of a principal to direct the allocation of corporate resources does not amount to legal dominion and control:

> Many principals presumably exercise *de facto* control over the funds of the corporations they manage. They can choose to cause their corporations to use those funds appropriately or inappropriately. The distinction is only relevant to the question whether the principal's conduct amounted to a breach of duty to the corporation.

*Bowers,* 99 F.3d at 156 (citing *Rupp,* 95 F.3d at 941).

Other circuit courts have held that a principal may establish legal control and dominion by first directing a transfer into his or her personal bank account and then making the payment from his personal account to the creditor. *Rupp,* 95 F.3d at 939 (citing *Bonded Fin. Servs.,* 838 F.2d at 892). In the present case, however, Video Depot purchased a cashier's check payable to Hilton, with Video Depot listed as the purchaser. Legal control over the funds consequently passed directly from Video Depot to Hilton.

Hilton contends that this view elevates form over substance. Whether Video Depot, at Arlynn's direction, purchased a cashier's check payable directly to Hilton or, instead, issued the funds to Arlynn, enabling him then to write a personal check for the sum, there is, so the argument goes, the same result—that Arlynn used corporate funds to satisfy a personal debt. What Hilton's argument fails to acknowledge, however, is the basic rationale for distinguishing in section 550 between initial and subsequent transferees. An initial transferee is exposed to stricter liability than a subsequent transferee because an initial transferee is in the best position to evaluate whether the conveyance is fraudulent. *See Bonded Fin. Servs.,* 838 F.2d at 892–93. Where, as here, a transferee receives funds directly from a debtor, the transferee's capacity to monitor—and, accordingly, its burden to monitor—is at its greatest. Thus, Hilton's receipt of a cashier's check clearly purchased by Video Depot subjects it to a burden of inquiry that it may not have had upon receipt of a check from Jeffrey Arlynn's personal account.

Moreover, the rule advocated by Hilton would have the anomalous result that every agent or principal of a corporation would be deemed the initial transferee when he or she effected a transfer of property in his or her representative capacity. *See Bowers,* 99 F.3d at 156. Such a rule "gives too much power to an unscrupulous insider to effect a fraudulent transfer ... without allowing a trustee to have the means for avoiding the transfer for the benefit of the debtor's creditors." *In re Mitchell,* 164 B.R. at 128. While the Sixth Circuit has expressed tentative support for this approach, *see IRS v. Nordic Village, Inc.* (*In re Nordic Village*), 915 F.2d 1049 (6th Cir.1990), *rev'd on other grounds,* 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992), no circuit court has based a decision on it, and we decline to depart from the considered judgment of the other circuits today. Thus, we conclude that

Arlynn's control over the business operations of Video Depot does not, in itself, compel a finding that Arlynn had dominion and control over the funds transferred from Video Depot to Hilton.

## II. Video Depot's "Loan" to Arlynn

██ Hilton next contends that the transfer of funds from Video Depot constituted a loan to Arlynn, giving Arlynn control over how the funds were spent and making him, not Hilton, the initial transferee. The bankruptcy court rejected this argument, citing insufficient evidence. Because we find nothing in the record to support a finding that Arylnn had dominion over the funds after they were disbursed by Video Depot, we agree with the bankruptcy court.

Hilton's argument rests on two documents that it submitted in support of its motion for summary judgment: excerpts from a ledger that appear to track payments by Video Depot on Arlynn's behalf and an affidavit from Arlynn. In the affidavit, Arlynn maintains:

> On or about June 15, 1990, I borrowed the sum of $65,000.00 from Video Depot and caused this loan transaction to be recorded in the records of the corporation. The $65,000.00 in corporate funds was used to purchase a cashier's check in the amount of $65,000 made payable to the Las Vegas Hilton in partial satisfaction of a debt I owed.... Prior to the commencement of involuntary bankruptcy proceedings against Video Depot, I repaid this specific loan to the corporation.

The ledger lists payments to Jeffrey Arlynn in the amount of $10,000 and $65,000 on June 15. On the credit side of the ledger, a $75,-000 payment from Arlynn is shown.

Simply referring to the transfer as a "loan" in the company ledger does not suffice, however, to demonstrate that at any point in time Arlynn exercised independent control over the funds. So long as the money remained in Video Depot's account, Arlynn's legal right to it was circumscribed by his duties to the corporation and its creditors. Once the funds were disbursed, Arlynn could use them only to pay Hilton. Regardless of how Hilton chooses to characterize the transfer, Hilton has failed to explain how Video Depot's issuance of a check earmarked expressly for the purchase of a cashier's check

to the Las Vegas Hilton gave *Arlynn* dominion over the funds.

Arlynn was a courier, not a transferee. Particularly in view of the fact that Arlynn, as principal of Video Depot, could direct that the transfer be called anything he pleased in the company ledger, we require more substantial evidence that he exercised independent control over the funds after they left Video Depot's account. The bankruptcy court gave Hilton ample opportunity to present such evidence, and Hilton failed to do so.

## CONCLUSION

██ The bankruptcy court had adequate grounds for determining that Hilton was an initial transferee under section 550(a). Accordingly, we affirm the district court's decision affirming the bankruptcy court. Since we find Hilton to have been an initial transferee, we do not reach Hilton's section 550(b) argument.

**AFFIRMED.**