In re Cynthia L. COHEN, Debtor.

**Modern Financial Plans & Services, Inc., Appellant,**

v.

**Robert P. Abele, Chapter 7 Trustee, Appellee.**

**BAP No. AZ–98–1567–RMeP.**
**Bankruptcy No. B–97–11212–PHX–RTB.**
**Adversary No. 98–00112.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted May 20, 1999.

Decided June 3, 1999.

Stanley M. Hammerman, Hammerman & Hultgren, Phoenix, AZ, for Modern Financial Plans & Services, Inc.

Terry A. Dake, Phoenix, AZ, for Robert P. Abele, Trustee.

Before: RUSSELL, MEYERS, and PERRIS, Bankruptcy Judges.

### OPINION

RUSSELL, Bankruptcy Judge.

A creditor received a cashier's check

from a chapter 7 [1] debtor in settlement of various disputes between them. The debtor's wife subsequently filed the within chapter 7 case. The trustee in this case filed a § 548 complaint against the creditor to recover the proceeds of the cashier's check as a fraudulent transfer from the debtor/wife to the creditor, contending, *inter alia,* that the creditor was an "initial transferee" of the monies within the meaning of § 550(a)(1). The bankruptcy court held that the creditor was an "initial transferee" and ordered the creditor to pay the trustee the amount of the cashier's check plus interest and costs. The creditor appeals. We REVERSE and REMAND.

## I. FACTS

Jeffrey Cohen purchased a mobile home in 1990 for approximately $90,000. Appellant Modern Financial Plans & Services, Inc. ("Modern") [2] financed approximately one-third of the purchase price and retained a security interest in the mobile home. Jeffrey sold the mobile home to a third party in 1991 after defaulting under the terms of the financing contract with Modern.

Jeffrey filed a chapter 7 petition in July 1996. His Summary of Schedules reflected monthly income and expenses of $800.00 and $920.00, respectively. Schedule "I" stated that he was married, and Schedule "H" reflected a "Cynthia" or "Cindy" Cohen as a co-debtor on four obligations.

Modern filed a § 523(a)(6) complaint against Jeffrey in October 1996, alleging that he wilfully and maliciously injured Modern's property by converting the proceeds of the sale of its collateral (*i.e.,* the mobile home) for his own use. Modern also filed an action in the State of New York against Jeffrey and the third party purchaser of the mobile home. Modern

and Jeffrey subsequently agreed to settle their disputes pursuant to a settlement stipulation under which Jeffrey agreed to pay Modern $21,000 in exchange for Modern's release of its lien against the mobile home, dismissal of its § 523 complaint against him with prejudice, and dismissal of the New York action against Jeffrey and the third party purchaser with prejudice.

Jeffrey paid Modern the $21,000 settlement amount, through his bankruptcy counsel, by way of a Bank of America cashier's check payable to Modern's counsel in Jeffrey's bankruptcy case. The cashier's check clearly designated Jeffrey on its face as the "purchaser." The bankruptcy court dismissed the § 523 complaint with prejudice in April 1997 pursuant to the settlement stipulation. Modern released its lien on the mobile home and dismissed the New York action against Jeffrey and the third party purchaser with prejudice.

Jeffrey's wife, Cynthia Cohen ("Cynthia" or the "debtor"), filed a chapter 7 case in June 1997. Appellee Robert P. Abele, the chapter 7 trustee ("trustee") for Cynthia's estate, filed a complaint against Modern under § 548 in February 1998, alleging that Cynthia, not Jeffrey, made the $21,000 payment to Modern to settle the § 523 complaint against Jeffrey in his bankruptcy case, that Cynthia had no liability to Modern, and that the transfer was therefore voidable because it took place less than one year prior to the debtor's (*i.e.,* Cynthia's) bankruptcy filing and she was insolvent at the time of the transfer.

Modern filed a Motion to Dismiss or for Summary Judgment (the "Summary Judgment Motion"), contending that the trustee was precluded from recovering the $21,000 payment received by Modern from Jeffrey

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

2. Jeffrey Cohen originally contracted with OnBank, formerly known as Onondaga Savings Bank, which subsequently assigned the financing contract to appellant.

because it was clear from the face of the cashier's check and the accompanying transmittal letter from Jeffrey's bankruptcy counsel that the funds were paid and transferred to Modern by Jeffrey and not Cynthia. Modern asserted that it had no reason to know that the source of the settlement funds belonged to anyone other than Jeffrey until it was informed of the trustee's claim for avoidance of the $21,000 transfer as a fraudulent conveyance by Cynthia. Modern further asserted that neither it nor its counsel were even aware of Cynthia's existence. It also pointed out that the trustee's counsel's letter informing Modern of the § 548 complaint acknowledged that the cashier's check identified Jeffrey as the purchaser.

Modern therefore argued that it was entitled to the protections afforded a subsequent "good faith" transferee of the monies within the meaning of § 550(b)(2). It also argued that the trustee should seek to avoid the initial transfer of the funds from the debtor to Jeffrey rather than Modern, observing that Jeffrey greatly benefitted from the use of the monies, whereas Modern received the funds from Jeffrey in good faith in satisfaction of his existing debt and gave up valuable consideration in exchange for the payment. Modern's president and counsel filed supporting affidavits regarding their lack of knowledge of Cynthia's existence, of the potential avoidability of the transfer, or of any reason to believe that Jeffrey paid the settlement from any source other than his own funds.

The trustee filed an opposition to the Summary Judgment Motion and a cross-motion for summary judgment. The trustee asserted that although the cashier's check designated Jeffrey as the purchaser, the source documentation obtained from the Bank of America undisputedly showed that the cashier's check was purchased by Cynthia from her account at that bank. The trustee contended that Jeffrey had

claimed no interest in the account in his own bankruptcy case, and that Cynthia claimed that the account was her sole and separate property and that Jeffrey had made no contributions to it.[3] Relying on *In re Video Depot, Ltd.*, 127 F.3d 1195 (9th Cir.1997), the trustee argued that Jeffrey was no more than a "courier" for the delivery of the cashier's check from Cynthia to Modern and that Modern was accordingly the "initial transferee" of the funds under § 550(a)(1).

Modern argued in response that the operative facts of *Video Depot* were distinguishable and the case was therefore inapplicable. It asserted that Jeffrey was not simply a courier because he had dominion and control over the funds as the designated purchaser of the check and because he chose to settle the adversary proceeding with Modern despite being under no obligation to do so. Modern claimed that it had no knowledge of Cynthia, her purported separate bank account, her bankruptcy filing, the contents of her schedules, or any other information that would put Modern on notice of her existence or of the potential avoidability of her transfer of the monies to Jeffrey.

Modern further argued that Cynthia effectively made a gift of the cashier's check to Jeffrey, transferred ownership of the funds and the right to control and enforce the cashier's check to him when she purchased the check and instructed the bank to designate him as the purchaser, and thus made Jeffrey the initial transferee of the funds and the purchaser of the cashier's check. Modern reiterated that it was therefore a subsequent good faith transferee entitled to the protections of § 550(b)(2) rather than the initial transferee.

The trustee's reply asserted that no evidence had been presented to prove that Cynthia intended the $21,000.00 to be a gift to Jeffrey. The trustee further con-

---

**3.** The record reflects that the trustee did not submit any affidavits or other testimony of any type to support these contentions.

tended that Modern had a duty as the initial transferee to inquire about the source of the funds because Jeffrey's schedules showed monthly income of only $800.00 and monthly expenses totaling $920.00.[4]

The bankruptcy court held a hearing on the Summary Judgment Motion in June 1998. At the hearing, the court struggled with the issue of Modern's duty to inquire about the source of the funds used to purchase the cashier's check given the check's clear designation of Jeffrey as the "purchaser," and expressed doubt as to whether Modern could have obtained knowledge that the funds came from Cynthia's bank account. The court nonetheless held that Modern was the initial transferee under § 550(a), denied the Summary Judgment Motion, and granted the trustee's cross-motion for summary judgment. The court subsequently entered a judgment ordering Modern to pay the trustee $21,000.00 plus interest and costs. Modern appeals.

## II. STANDARD OF REVIEW

The Panel reviews an order granting summary judgment *de novo*. *In re Bullion Reserve of North America ("BRNA")*, 922 F.2d 544, 546 (9th Cir.1991). Viewing the evidence in the light most favorable to the nonmoving party, the BAP must determine whether genuine issues of material fact exist and whether the bankruptcy court correctly applied the relevant substantive law. *Id.* at 546.

## III. ISSUE

Whether Modern was the "initial transferee" under § 550(a).

## IV. DISCUSSION

Modern argues that the bankruptcy court based its holding that Modern was the initial transferee on an erroneous application of *In re Video Depot, Inc.*, 127 F.3d 1195 (9th Cir.1997), and contends that Jeffrey Cohen was the initial transferee of the $21,000 cashier's check. We agree.

Under § 548,[5] a trustee may avoid any transfer of an interest of a debtor in property that was made within one year of the filing of the debtor's bankruptcy petition. A trustee may thereafter recover an avoided transfer from an "initial transferee" or from an "immediate or mediate" transferee under §§ 550(a)(1) and (2)[6]. A trustee's right to recover from an "initial transferee" is absolute. *BRNA*, 922 F.2d at 547. Section 550(b),[7] however,

---

4. Again, the record reflects that no affidavits were filed by Jeffrey or anyone else concerning the source or ownership of the funds in question.

5. § 548 provides in pertinent part:
   (a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
   . . . .
   (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
   (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation[.]
   11 U.S.C. § 548 (amended 1998). The Code sections quoted in this Opinion include all amendments as enacted through 1998. Any changes between the Code sections as they

existed in 1997, when this bankruptcy case was filed, and the date of this Opinion are not material to the resolution of this appeal.

6. § 550(a) states in pertinent part:
   (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under . . . section 548, . . . the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
   (1) the initial transferee of such transfer of the entity for whose benefit such transfer was made; or
   (2) any immediate or mediate transferee of such initial transferee.
   11 U.S.C. §§ 550(a)(1) and (2).

7. § 550(b) provides in pertinent part:
   (b) The trustee may not recover under section (a)(2) of this section from—
   (1) a transferee that takes for value, including satisfaction or securing of a pres-

"prohibits recovery from 'immediate and mediate' transferees who take for value, in good faith, and without knowledge" of the voidability of the transfer avoided. 11 U.S.C. §§ 550(b)(1); *BRNA,* 922 F.2d at 547.

The Code does not specifically define "transferee." In *BRNA,* the Ninth Circuit Court of Appeals adopted the "dominion" test articulated by the Seventh Circuit, which stated that *"[T]he minimum requirement of status as a "transferee" is dominion over the money or other asset, the right to put the money to one's own purposes."* 922 F.2d at 548 (quoting *Bonded Financial Services, Inc. v. European American Bank,* 838 F.2d 890, 893 (7th Cir.1988)(emphasis added in *BRNA* )). The Ninth Circuit paraphrased *Bonded Financial* as determining that an entity lacks "dominion" over the funds in question "until it is in essence 'free to invest the whole [amount] in lottery tickets or uranium stocks.'" 922 F.2d at 549 (quoting *Bonded Financial,* 838 F.2d at 894).

The Ninth Circuit in *BRNA* also quoted with approval the "control" test articulated by the Eleventh Circuit as follows:

> The test . . . is a very flexible, pragmatic one; in deciding whether debtors had controlled property subsequently sought by their trustees, courts must "look beyond the particular transfers in question to the entire circumstance of the transactions."

> The control test, then, . . . simply requires courts to step back and evaluate a transaction in its entirety to make sure that their conclusions are logical and equitable.

922 F.2d at 548–49 (quoting *In re Chase and Sanborn Corp.,* 848 F.2d 1196, 1199 (11th Cir.1988) (citations omitted)).

The Ninth Circuit applied the "dominion" and "control" tests in *Video Depot* in order to determine whether the principal of a debtor corporation was the initial transferee of corporate funds used to satisfy the principal's personal obligation. *Video Depot,* 127 F.3d at 1198–1200.

In that case, the president of Video Depot, Jeffrey Arlynn ("Arlynn"), was an active gambler at the Las Vegas Hilton ("Hilton") who ordinarily used either his own funds or credit extended to him by Hilton to repay his gambling losses. On one occasion, however, after Arlynn incurred an unusually large debt, Video Depot purchased a cashier's check in its own name in the amount of $65,000 to partially satisfy Arlynn's debt. The $65,000 cashier's check clearly designated Video Depot as the purchaser. Arlynn personally delivered the $65,000 cashier's check to Hilton together with his own personal cashier's check in the amount of $10,000. Arlynn had never before presented either a cashier's check or a check purchased by Video Depot to cover his gambling losses. Video Depot filed bankruptcy a few months after Arlynn's delivery of the cashier's checks to Hilton. *Id.* at 1196–97.

A trustee appointed shortly thereafter filed suit against Hilton to recover the proceeds of the $65,000 cashier's check. The trustee and Hilton stipulated that the transfer was avoidable under § 548 but disagreed as to whether Hilton was the initial transferee under § 550(a) or a subsequent transferee under § 550(b). The bankruptcy court ultimately determined that Hilton was the initial transferee and thus strictly liable to the bankruptcy estate under § 550(a)(1), and that it had failed to establish a subsequent transferee defense under § 550(b). The district court affirmed the bankruptcy court's decision under § 550(a)(1) and therefore did not reach Hilton's § 550(b) defense. *Id.* at 1197.

On appeal to the Ninth Circuit, Hilton contended that Arlynn was the initial transferee because he controlled the debt-

ent or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided[.]

11 U.S.C. § 550(b)(1).

or corporation and directed the transfer of the corporate funds to Hilton. The Ninth Circuit rejected this argument, determining that legal control over the funds passed directly from Video Depot to Hilton because Video Depot purchased the $65,000 cashier's check with its own name listed as the purchaser. *Id.* at 1199. The Court accordingly held that Hilton was the initial transferee. *Id.* at 1200.[8]

In so holding, the Court emphasized the burden of inquiry to which a transferee who receives funds directly from a debtor is subjected, stating:

> Where, as here, a transferee receives funds directly from a debtor, the transferee's capacity to monitor—and, accordingly, its burden to monitor—is at its greatest. *Thus, Hilton's receipt of a cashier's check clearly purchased by Video Depot subjects it to a burden of inquiry that it may not have had upon receipt of a check from Jeffrey Arlynn's personal account.*

*Id.* at 1199 (emphasis added). The Court reasoned that an initial transferee is exposed to stricter liability and bears a greater burden to monitor a transaction because it is in the best position to evaluate whether a transfer is fraudulent. *Id.* (citing *Bonded Financial,* 838 F.2d at 892–93).

The bankruptcy court in the case before us held that Modern, like Hilton in *Video Depot,* was the "initial transferee" under § 550(a). The transcript of the hearing on the Summary Judgment Motion reflects that in order to reach its decision the bankruptcy court clearly struggled with the issue of Modern's ability to satisfy the "burden of inquiry" emphasized in *Video Depot. See generally* Transcript of June 4, 1998 Hearing on Summary Judgment Motion ("Transcript").

The problem with the bankruptcy court's reliance on *Video Depot* is that one of the primary bases for the Ninth Circuit's finding that Hilton was the initial transferee was the fact that Hilton was under a clear duty of inquiry. As noted above, the Court emphasized that:

> Thus, Hilton's receipt of a cashier's check clearly purchased by *Video Depot* subjects it to a burden of inquiry that it may not have had upon receipt of a check from Jeffrey Arlynn's personal account.

127 F.3d at 1199. That duty of inquiry simply did not exist under the facts of the case before us. The cashier's check in *Video Depot* clearly reflected on its face that it was purchased by an entity other than the person who owed the obligation to Hilton, whereas the cashier's check in this case clearly reflected on its face that it was purchased by the person who owed the obligation to Modern (*i.e.,* Jeffrey). Thus, Hilton was put on notice of the different identities of the purchaser of the check and the obligor of the debt, but Modern was not.

Another primary basis for the finding in *Video Depot* was the Ninth Circuit's concern that "[t]he bankruptcy courts are split on the question of whether the principal of a debtor corporation necessarily is the initial transferee of corporate funds used to satisfy a personal obligation." 127 F.3d at 1198 (citations omitted). Simply stated, the case before us did not involve a debtor corporation, a principal, or the use of corporate funds to satisfy a corporate principal's personal obligation. The debtor corporation's issuance of a check on behalf of its principal's personal obligation, which triggered the Ninth Circuit's "burden of inquiry" analysis, is missing from this case.

The Ninth Circuit was also concerned with the issue of the power of unscrupulous corporate insiders to effect fraudulent transfers. The Court emphasized that:

> finding that he had dominion over the funds after they were disbursed by Video Depot. 127 F.3d at 1200.

---

8. The Ninth Circuit characterized Arlynn as a courier rather than a transferee on the basis that the record lacked evidence to support a

[T]he rule advocated by Hilton would have the anomalous result that every agent or principal of a corporation would be deemed the initial transferee when he or she effected a transfer of property in his or her representative capacity. *See Bowers*, 99 F.3d at 156.[9] Such a rule "gives too much power to an unscrupulous insider to effect a fraudulent trans·fer ... without allowing a trustee to have the means for avoiding the transfer for the benefit of the debtor's creditors." *In re Mitchell*, 164 B.R. at 128.[10]

127 F.3d at 1199. The issue of unscrupulous conduct by a corporate insider is also missing from the case before us.

At the hearing on the Summary Judgment Motion, the bankruptcy court appeared to recognize the inapplicability of *Video Depot* and the fact that logic and common sense dictated a different result than the result the bankruptcy actually reached in this case:

> [A]s I understand the record before me, nobody's contending that Modern Finance is anything other than a victim in this situation.

Transcript, p. 11.

> [W]hat if Cynthia had done this—what if Cynthia had said, "Okay, Jeff. I'll write you a check for $21,000", draws it as a cashier's check out of her account payable to him. He deposits it into his account and gets a cashier's check out of his account, payable to Modern with the Jeff Cohen at the top. I think under those facts, he—
>
> [TRUSTEE'S COUNSEL]: Modern wins.
>
> THE COURT: Modern wins.
>
> . . . .
>
> [I]t does seem to me—this is a tough case. It seems to me it's a step removed farther from *Video Depot*. Because it didn't say at the top of the check "Cynthia Cohen." I mean, Modern, you know, on the face of it, transactions seemed to be fully appropriate.

*Id.* at 20–21. We agree with the court's above-quoted analysis because what happened in this case ˙was the functional equivalent of Cynthia merely giving Jeffrey the funds and Jeffrey buying the cashier's check. Therefore, the result should have been the same as if Cynthia actually gave Jeffrey the cash to buy the check.[11]

█ Thus, an evaluation of the transaction in its entirety compels the logical and equitable conclusion that Jeffrey, not Modern, was the initial transferee in this case.[12] The bankruptcy court's erroneous

---

9. *Bowers v. Atlanta Motor Speedway, Inc. (In re Southeast Hotel Properties Limited Partnership)*, 99 F.3d 151 (4th Cir.1996).

10. *Richardson v. FDIC (In re M. Blackburn Mitchell, Inc.)*, 164 B.R. 117 (Bankr.N.D.Cal. 1994).

11. For purposes of our analysis, we have assumed, *arguendo*, that Cynthia provided the funds used to purchase the cashier's check. This fact is by no means clear from the record on appeal. Although it is undisputed that the couple was married, no evidence was presented to refute the allegation that Jeffrey had no interest in the account. *See supra* notes 3 and 4.

In addition, the schedules in Jeffrey's case were unclear as to the role of Cynthia in Jeffrey's bankruptcy case, a fact which the bankruptcy court commented upon unfavorably:

> It does seem, if one were reading this with a jaundiced eye, that there was somewhat of an effort to minimize or, perhaps, conceal the role of Cynthia Cohen in the Jeff Cohen case. Hard to say.

Transcript, p. 18.

12. This result is consistent with the "control test" approved by the Ninth Circuit in *BRNA*, which we discussed above:

> The test ... is a very flexible, pragmatic one; in deciding whether debtors had controlled property subsequently sought by their trustees, courts must "look beyond the particular transfers in question to the entire circumstance of the transactions."
>
> The control test, then, ... simply requires courts to step back and evaluate a transaction in its entirety to make sure that their conclusions are logical and equitable.

922 F.2d at 548–49 (quoting *Chase and Sanborn*, 848 F.2d at 1199 (citations omitted)).

determination that Modern was the initial transferee must accordingly be reversed.

*Video Depot*'s "burden of inquiry" analysis is also relevant to a determination of Modern's status as a subsequent good faith purchaser under § 550(b). The bankruptcy court in this case did not reach that issue in granting the trustee's cross-motion for summary judgment. The matter must therefore be remanded for consideration of this issue.

## V. CONCLUSION

The bankruptcy court determined that the appellant was the initial transferee under § 550(a) of an avoidable transfer based on an erroneous application of *In re Video Depot*, 127 F.3d 1195 (9th Cir.1997) to the facts of this case. The court did not reach the issue of appellant's alleged status as a subsequent good faith transferee under § 550(b). The court's determination that the appellant was as an initial transferee under § 550(a) is REVERSED, and the matter is REMANDED for consideration of the issue of § 550(b).