**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARTY GOLDSMITH,<br><br>Appellant,<br><br>v.<br><br>JAMES R. ZAZZALI, as Trustee for the Debtors' Jointly-Administered Chapter 11 Estates and/or as Litigation Trustee for the DBSI Estate Litigation Trust,<br><br>Appellee. | No.  19-35629<br><br>D.C. No. 1:19-cv-00002-WBS<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the District of Idaho
William B. Shubb, District Judge, Presiding

Submitted May 12, 2020**
Portland, Oregon

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*      The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

Before: BYBEE and VANDYKE, Circuit Judges, and CARDONE,*** District Judge.

Appellant seeks to prevent the trustee of a bankruptcy estate (Trustee) from avoiding certain payments under 11 U.S.C. § 548(a)(1)(A). The bankruptcy court concluded that the Trustee could avoid payments of proceeds exceeding the market value of purchased real property because the transaction was connected to a Ponzi scheme. The district court affirmed. Because no legal error is apparent, we likewise affirm.

We assume the parties' familiarity with the facts and will only discuss them where necessary. We independently review the bankruptcy court's legal conclusions de novo and its factual findings for clear error. *Rosson v. Fitzgerald (In re Rosson)*, 545 F.3d 764, 770–71 (9th Cir. 2008).

1. Appellant first contends that he was not the initial transferee for the closing payment of $25,400,000. He claims that DBSI-TV, an entity affiliated with DBSI, was the initial transferee. Qualifying as an initial transferee requires enjoying "dominion over the money or other asset," that is, "the *right* to put the money to one's own purposes." *Henry v. Official Comm. of Unsecured Creditors of Walldesign, Inc. (In re Walldesign, Inc.)*, 872 F.3d 954, 962 (9th Cir. 2017)

*** The Honorable Kathleen Cardone, United States District Judge for the Western District of Texas, sitting by designation.

(citation omitted). In other words, an entity must have possessed "legal title and the ability . . . to freely appropriate the transferred funds." *Mano-Y & M, Ltd. v. Field (In re The Mortg. Store, Inc.)*, 773 F.3d 990, 996 (9th Cir. 2014).

The bankruptcy court concluded that DBSI-TV "never received or held legal title to the funds" and could not "freely appropriate those funds as they were committed to the closing agent." Nothing in the record contradicts these findings. DBSI-TV was formed only for the purchase of the Tanana Valley Property, never held any other assets, never generated revenue, and had no employees of its own. Most notably, DBSI-TV did not have a bank account. Appellant makes no effort to explain how an entity could acquire legal title if it had no way of possessing the funds. Thus, the bankruptcy court did not err in finding that Appellant was the initial transferee of the closing payment.

2. Appellant next argues that none of the money is reachable because the earnest-money payment and the closing payment constituted two separate transactions, each protected by different provisions in the statute. No one disputes that the approximately $2.98 million earnest-money payment is unreachable by the Trustee. The bankruptcy court found that the property's fair-market value at the time of the transaction was $25,480,000. Appellant argues that because he was a good-faith seller, he can therefore keep the $25,400,000, notwithstanding the fact

3

that the sum of both payments for the property was approximately $28,380,000 inclusive of the earnest-money payment.

Appellant's argument is unsupported by the facts and the statute. The two payments constituted a single transaction to purchase the property because both payments were necessary to purchase the property. Aggregating both payments does not eliminate a statutory defense as Appellant contends. Appellant's status as a secondary transferee shields the $2.98 million earnest-money payment per 11 U.S.C. § 550(b). And his selling the property in good faith protects the difference between the earnest-money payment and the $25,480,000 market-value of the property per 11 U.S.C. § 548(c). The bankruptcy court, therefore, did not err in adding the two payments together and holding Appellant liable for the amount exceeding the market value.

3. Lastly, Appellant challenges the application of the Ponzi presumption to this case. Per the Ponzi presumption, "the mere existence of a Ponzi scheme" is "sufficient to establish the actual intent to hinder, delay, or defraud creditors under 11 U.S.C. § 548(a)." *Johnson v. Neilson (In re Slatkin)*, 525 F.3d 805, 814 (9th Cir. 2008). The evidence sufficiently shows that the purchase of the Tanana Valley Property was connected with DBSI's broader Ponzi scheme. Kastera and DBSI-TV were not independent of DBSI. Evidence at trial also showed that

4

Douglas Swenson was orchestrating the allocation of money throughout DBSI's related entities—including Kastera. Testimony established that Kastera never used "non-DBSI third-party financing" in acquiring investment properties. Funds for the purchase of properties by Kastera would come from tenancy-in-common sales or other sources of DBSI revenue. And six months after closing, Tanana Valley real estate started getting used for tenancy-in-common sales. Finally, expert testimony at trial established that "as early as January 2005," the company "became dependent upon new investor money" to pay existing investors. Given these links, the bankruptcy court did not err in applying the Ponzi presumption.

AFFIRMED.