In re ANTON NOLL, INC., Debtor.

Andrew S. Richardson, Chapter 7
Trustee of Anton Noll, Inc.,
Plaintiff/Appellant,

v.

United States of America, Internal Revenue Service, Defendant/Appellee.

BAP No. RI 01–026.
Bankruptcy No. 99–13744.

United States Bankruptcy Appellate Panel
of the First Circuit.

May 16, 2002.

Andrew S. Richardson, Thomas P. Quinn & Boyajian, Harrington & Richardson, on brief, for appellant.

Stephen J. Turanchik, U.S. Department of Justice and Margaret E. Curran, U.S. Attorney for the District of Rhode Island, on brief, for the appellee.

Before LAMOUTTE, DE JESUS, and BOROFF, U.S. Bankruptcy Appellate Panel Judges.

PER CURIAM.

Andrew S. Richardson (the "Trustee"), as trustee in bankruptcy of the debtor, Anton Noll, Inc. (the "Debtor"), has obtained a ruling from the bankruptcy court below that a prepetition transfer of $260,892.54 from the Debtor's assets is voidable as a fraudulent transfer under 11 U.S.C. § 548. That ruling is not contested. However, the Trustee appeals the bankruptcy court's additional holding that the Debtor's principal, Michael F. Sparfven ("Sparfven"), and not the United States (hereinafter the "IRS"), was the "initial transferee" of those funds for purposes of 11 U.S.C. § 550(a)(1). For the reasons set forth below, we AFFIRM the bankruptcy court's holding.

*Jurisdiction*

The bankruptcy court's legal application of § 550(a) is a final judgment. We have

jurisdiction of this appeal under 28 U.S.C. § 158(a)(1) and (b).

### Standard of Review

A bankruptcy court's findings of fact are reviewed employing a clearly erroneous standard; its conclusions of law are reviewed de novo. *In re Spadoni*, 271 B.R. 703, 706 (1st Cir. BAP 2002) (*citing to Brandt v. Repco Printers & Lithographics, Inc. (In re Healthco Int'l, Inc.)*, 132 F.3d 104, 107–108 (1st Cir.1997)); Fed. R.Bank.P. 8013. Because we review the bankruptcy court's application of § 550 of the Bankruptcy Code to the undisputed facts of this case, our review here is de novo.

### Facts and Travel of the Case

This appeal comes before the Panel upon a stipulated record.

The Debtor corporation operated a zinc alloy and metal fabrication business. During the relevant period, Sparfven was the Debtor's president and CEO and controlled one hundred percent of the Debtor's stock through Sparfven & Co., a separate company which Sparfven in turn owned and controlled. Sparfven was also personally indebted to the IRS in the amount of $260,892.54 on account of unpaid personal income taxes for the years 1995, 1996, and 1997. On June 21, 1999, the IRS filed a federal tax lien against Sparfven, attaching real estate owned by Sparfven in Indian River County, Vero Beach, Florida.

On August 25, 1999, Sparfven caused the Debtor corporation to issue check No. 101 in the amount of $260,892.54, payable to the order of "cash" and drawn from the Debtor's account at Slade Ferry's Bank (the "Bank"). The amount of the check was the precise amount Sparfven owed to the IRS. In fact, the memo portion of the check contained the writing "IRS $260,892.54." Sparfven then personally endorsed the check and presented it to the Bank, purchasing a bank check made payable to the IRS for the same amount. At the time of the withdrawal of its funds, the Debtor was not indebted to the IRS nor did it receive any value on account thereof.

On the same day, Sparfven delivered the treasurer's check to a Revenue Officer at the IRS office in Warwick, Rhode Island, who accepted the check in full satisfaction of Sparfven's outstanding tax liabilities. The Revenue Officer had no knowledge of the source of these funds. In April of 2000, the IRS filed a Certificate of Release of Federal Tax Lien on Sparfven's property in Indian River County, Vero Beach, Florida.

On September 23, 1999, the Debtor was petitioned into a state court receivership under Rhode Island law. Not long thereafter, an involuntary Chapter 7 petition was filed against the Debtor in the bankruptcy court below, and an Order for Relief was entered on October 29, 1999. Andrew S. Richardson was subsequently appointed Chapter 7 trustee.

On December 22, 1999 the Trustee filed an adversary proceeding against the IRS under § 548 of the Code to recover the $260,892.54 transferred from the Debtor. The parties stipulated that all the elements of a fraudulent conveyance under § 548(a)(1)(B) had been met, namely that the Debtor, while insolvent and within one year of the commencement of this case, transferred the subject funds and received less than a reasonably equivalent value in exchange therefor. Upon these stipulated facts, the sole question presented to the Bankruptcy Court was whether the IRS or Sparfven should be held to be the initial transferee under § 550(a)(1). After a non-evidentiary hearing, the Bankruptcy Court ruled that Sparfven, and not the IRS, was the initial transferee. The Trustee appeals from that ruling.

### Discussion

Section 548 of the Bankruptcy Code permits a trustee in bankruptcy to void transfers from a debtor's assets, or obligations incurred by the debtor, which transfers or obligations were respectively transferred or incurred within one year of case commencement and are deemed fraudulent under the statute.[1] Section 550 of the Code, in turn, determines from whom the trustee may recover fraudulently transferred assets or their proceeds.[2] Section 550(a)(1) provides that the trustee may recover fraudulently transferred property or its value from the "initial transferee . . . or the entity for whose benefit such transfer was made." § 550(a)(1). The trustee may alternatively recover from any immediate or mediate transferee of the initial transferee. § 550(a)(2). However, the trustee is limited to a single satisfaction. § 550(d).

▮▮▮ The extent of recovery from an initial transferee and that from an immediate or mediate transferee differs significantly. Initial transferees are strictly liable to the trustee for recovery of fraudulently transferred property. *Schafer v. Las Vegas Hilton Corp. (In re Video Depot, Ltd.)*, 127 F.3d 1195, 1197–98 (9th Cir.1997). The trustee "may always recover from the initial transferee regardless of [that transferee's] good faith, value, or lack of knowledge of the voidability of the transfer." *Rupp v. Markgraf*, 95 F.3d 936, 938 (10th Cir.1996). In contrast, a immediate or mediate transferee will not be liable for the recovery of fraudulently transferred funds if "the subsequent transferee accepted the transfer for value, in good faith, and without knowledge of the transfer's voidability." § 550(b)(2); *In re Video Depot*, 127 F.3d at 1198.

The Trustee does not contest the IRS claims of good faith, value given, and lack of knowledge of the subject transfer's voidability. Accordingly, should the IRS be deemed to be an immediate or mediate transferee under § 550(a)(1), the Trustee acknowledges that he could not recover the fraudulently transferred funds from the IRS. However, the Trustee maintains that the IRS, and not Sparfven, was the initial transferee of the funds fraudulently transferred from the Debtor.

The term "transferee" is not defined in the Bankruptcy Code, and there is no legislative history to elucidate its meaning. *Bonded Fin. Serv., Inc., v. Eur. Am. Bank*, 838 F.2d 890, 893 (7th Cir.1988). To date, the First Circuit has not addressed trans-

---

1. 11 U.S.C. § 548 provides in relevant part:
   (a)(1) The Trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily . . .
   (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
   (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

2. 11 U.S.C. § 550 provides in relevant part:
   (a) . . . The trustee may recover, for the benefit of the estate, the property transferred, or if the court so orders, the value of such property, from—
   (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
   (2) any mediate or immediate transferee of such initial transferee.
   (b) The trustee may not recover under section (a)(2) of this section from—
   (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or
   (2) any immediate or mediate good faith transferee of such transferee.

feree status under § 550 of the Code. *Perrino v. Salem, Inc.,* 243 B.R. 550, 555 (D.Me.1999). However, courts faced with similar facts have uniformly followed the test set forth by the Seventh Circuit in the *Bonded* case. *See id.; Christy v. Alexander & Alexander of New York, Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey),* 130 F.3d 52 (2d Cir.1997); *Bowers v. Atlanta Motor Speedway (In re Southeast Hotel Prop. Ltd. P'ship.),* 99 F.3d 151 (4th Cir.1996); *In re Video Depot, Ltd.,* 127 F.3d 1195 (9th Cir.1997); *Rupp v. Markgraf,* 95 F.3d 936 (10th Cir.1996); *Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.),* 904 F.2d 588 (11th Cir.1990).

In *Bonded,* the corporate principal caused the debtor corporation to issue a check in the amount of $200,000 made payable to the company's depositary bank. *Bonded,* 838 F.2d at 891. The instructions written on the check directed the bank to deposit the funds into the principal's personal account, and the bank complied with those instructions. *Id.* Ten days later, the principal instructed the bank to debit the $200,000 from his account and to apply the funds to reduce his personal indebtedness to the bank. *Id.*

■ On appeal of a determination by the bankruptcy court that the bank was not the initial transferee of the debtor company's misappropriated funds, the Seventh Circuit affirmed. It reasoned that the bank's possession of the funds in the principal's account did not render the bank a transferee of those monies until the corporate principal decided to transfer the funds to the bank. Until then, the principal was free to direct the funds to any transferee. "The minimum requirement of status as a 'transferee' is dominion over the money or other asset, the right to put the money to one's own purpose." *Id.* at 893.

■ The *Bonded* court reasoned that a "mere conduit" could not be deemed a transferee and that merely having the ability to control funds (as principals of companies often do) does not automatically render the possessor a transferee. *Id.* at 893–94. "When A gives a check to B as agent for C, then C is the 'initial transferee'; the agent may be disregarded." *Id.* at 893. "In order to be a transferee of the debtor's funds, one must (1) actually receive the funds, and (2) have full dominion and control over them for one's own account, as opposed to receiving them in trust or as agent for someone else." *Rupp v. Markgraf,* 95 F.3d at 942.

■ Since the Seventh Circuit's decision in *Bonded,* it has become well settled that transferee status under § 550(a)(1) necessitates the transferee's "dominion and control," and that "dominion and control" refers to legal, as opposed to mere physical possession of the property transferred. *Bowers,* 99 F.3d at 156 ("[T]he dominion and control test set forth in *Bonded* requires *legal* dominion and control."); *Security First Nat. Bank v. Brunson (In re Coutee),* 984 F.2d 138, 141 n. 4 (5th Cir. 1993) ("Dominion and control means legal dominion and control."). Thus, to be held to the standard of the initial transferee, a transferee must have the legal right to use the funds to whatever purpose he or she wishes, be it to invest in "lottery tickets or uranium stocks." *Bonded,* 838 F.2d at 894.

■ The *Bonded* test is grounded in a practical view of the transaction. Indeed, courts have uniformly rejected the notion that corporate principals should *ipso facto* be held to be the initial transferee when they misappropriate corporate funds. *See. e.g., Gen. Elec. Capital Auto Lease, Inc. v. Broach (In re Lucas Dallas, Inc.),* 185 B.R. 801, 809 (9th BAP Cir.1995) ("A

corporate principal does not become a 'transferee' by the mere act of causing the debtor [to] make a fraudulent transfer.") (*Citing to Richardson v. FDIC (In re M. Blackburn Mitchell, Inc.),* 164 B.R. 117 (Bank.N.D.Cal.1994)); *In re Southeast Hotel,* 99 F.3d at 156 (same). Rather, the "dominion and control" test "requires courts to step back and evaluate a transaction in its entirety to make sure that their conclusions are logical and equitable." *Danning v. Miller (In re Bullion Reserve of N. Am.),* 922 F.2d 544, 549 (9th Cir.1991). *Accord In re Lucas Dallas, Inc.,* 185 B.R. at 808.

Applying this practical approach, the *Bonded* court distinguished between two scenarios wherein a corporate principal misappropriates funds from a debtor company for the principal's personal use. In the first, characterized as a "one step transaction," the principal causes the company to issue a check payable directly to the principal's creditor. As an example, "[i]f the note accompanying [the] check [states]: 'use this check to reduce [the principal's] loan instead of 'deposit this check into [the principal's] account,' § 550(a)(1) would provide a ready answer. The [b]ank would be the initial transferee and [the principal] would be the entity for whose benefit the transfer was made." *Bonded,* 838 F.2d at 892. In the second scenario, a "two step transaction," the principal first acquires legal title to the funds and therefore full dominion and control, and accordingly must be deemed to be the initial transferee. *Id.* at 893–94.

The bankruptcy court here applied the *Bonded* test, and we approve. Therefore, we are left to determine whether the transaction which resulted in receipt of the funds by the IRS was a one step or two step transaction. In order to do so, we must first look to state law to determine "what property interests each party obtained in the transaction." *Perrino,* 243 B.R. at 554. Specifically, we must identify the status and rights of a party who holds a check payable to "cash."

Under Rhode Island law, a check payable to "cash" is an instrument payable to the bearer. R.I.Gen.Laws § 6A–3–111(c) (2000) (repealed 2001).[3] A bearer is "the person in possession of the instrument." R.I.Gen.Laws § 6A–1–201(5) (2000) (repealed 2001). Rhode Island law defines negotiation as "the transfer of an instrument in such form that the transferee becomes a holder." R.I.Gen.Laws § 6A–3–202(1) (2000) (repealed 2001). If an instrument is payable to bearer, it is negotiated by delivery. *Id.* In turn, "[t]he holder of an instrument whether or not he or she is the owner may transfer or negotiate it and ... on payment or satisfaction, discharge it or enforce payment in his or her own name." R.I.Gen.Laws § 6–3–301 (2000) (repealed 2001).

Much like the facts presented in *Bonded,* this case involves a two step transaction. Because the check was payable to "cash," it was negotiable upon delivery to the bearer, Sparfven. Thus, under state law, Sparfven obtained legal ownership and possession of the Debtor's funds upon

---

**3.** Rhode Island adopted the revised Uniform Commercial Code in July of 2001, effectively repealing the pre-revision version of the UCC. However, because the transactions in question occurred under the old version of the UCC, we apply those code sections in our analysis. "As a general rule, statutes operate prospectively from and after the effective date of the statute. It is only in the event that a

statute contains clear and explicit language requiring retroactive application that a statute will be interpreted to operate retrospectively." *Avanzo v. Rhode Island Dept. of Human Serv.,* 625 A.2d 208, 211 (R.I.1993). There being no such explicit language in the Rhode Island revisions of the UCC, we apply the pre-revision code.

receipt of the check. At that point, Sparfven obtained the legal right to use the money as he pleased, be it to buy "lottery tickets or invest in uranium stocks." *Bonded,* 838 F.2d at 894. Here, Sparfven chose to purchase a treasurer's check to satisfy his tax liabilities with the IRS. Sparfven, therefore, exercised sufficient dominion and control over the funds for us to determine that he was the initial transferee under § 550(a)(1) and that the IRS was the subsequent transferee. *See Whitacre Sunbelt, Inc. v. S. Fulton Mach. (In re Whitacre Sunbelt, Inc.),* 200 B.R. 422, 426–27 (Bankr.N.D.Ga.1996) (holding that because the debtor corporation's check was payable to the principal, case involved a two step transaction and the principal was the initial transferee); *Huennekens v. Marx (In re Springfield Contracting Corp.),* 154 B.R. 214, 219 (Bankr.E.D.Va. 1993) (principal either received cash or was the holder in due course of checks payable to "cash" and accordingly was the initial transferee of the debtor corporation's fraudulently transferred funds); *O'Neal v. Southwest Mo. Bank of Carthage (In re Broadview Lumber Co., Inc.),* 168 B.R. 941, 963 (Bankr.W.D.Mo.1994) (transaction where cashier's check was deposited into the corporate principal's personal bank account constituted a two step transaction and principal was the initial transferee).[4]

The Trustee argues that because Sparfven held the check for a mere eight hours before trading it for a treasurer's check payable to the IRS in the same amount, he lacked physical possession of the funds and thus fails the first prong of the *Bonded* test, namely receipt of the funds. We find this argument unconvincing. As discussed above, dominion and control under *Bonded* means *legal,* not physical dominion and control of the funds. Thus, whether Sparfven held the check for a mere eight hours or for ten days, as in *Bonded,* is irrelevant. Under Rhode Island law, he had the legal right to use the funds upon delivery of the check, and whether he chose to act immediately upon that right or wait 10 days is of no significance for purposes of identifying the initial transferee under § 550(a)(1).

■ Moreover, the Trustee's argument that Sparfven was a mere agent following the company's instructions on the check which stated "IRS $260,892.54" holds no sway. Under Rhode Island law, instructions on the memo portion of a check do not affect the negotiability of the instrument. R.I.Gen.Laws § 6A–3–119(2) (2000) (repealed 2001). Finally, whether Sparfven appropriated the funds in breach of his fiduciary duties as a corporate officer forms no part of the "dominion and control" test. An inquiry into whether the

4. *Cf. Perrino,* 243 B.R. at 560–62 (holding that creditor receiving funds from the Debtor corporation was the initial transferee where third party remitter of cashier's check had no legal right to enforce instrument under state law); *In re Southeast Hotel,* 99 F.3d at 156–57 (corporate principal's creditor was the initial transferee where debtor company issued a check payable to a bank with instructions to issue a cashier's check payable to the creditor); *In re Coutee,* 984 F.2d at 141 (lender bank, not guarantor law firm, was the initial transferee of the debtors' funds where law firm held funds in trust account and paid debts to bank as agent for the debtors); *In re* *Video Depot,* 127 F.3d at 1200 (where debtor corporation issued cashier's check payable directly to the principal's creditor, issue involved one step transaction and creditor, not the principal, was the initial transferee); *Rupp,* 95 F.3d at 941 (principal's creditors were initial transferees where principal caused debtor company to instruct bank to issue cashier's check payable to the creditors); *In re Chase & Sanborn Corp.,* 904 F.2d at 599–600 (bank issuing loan to corporate principal was initial transferee where debtor company issued check to the bank with instructions that it apply the funds to offset principal's debt).

882

principal directed the company's funds "appropriately or inappropriately is not relevant to the question of whether he or she is an initial transferee under § 550.... The distinction is only relevant to the question [of] whether the principal's conduct amounted to a breach to the corporation." *In re Southeast Hotel*, 99 F.3d at 156 (quoting *Rupp*, 95 F.3d at 941); *Bonded*, 838 F.2d at 893–94.

As noted by the Seventh Circuit in *Bonded*, differentiating between a one step and a two step transaction has real legal significance—it is not merely an act of upholding form over substance. *Bonded*, 838 F.2d at 892. In enacting § 550, Congress allocated the burden of inquiry and the risk on the initial transferee or the entity for whose benefit the transfer was made. "The initial transferee is the best monitor; subsequent transferees usually do not know where the assets came from and would be ineffectual monitors if they did." *Id.* at 892–93.

In the instant case, Sparfven obtained a check issued to "cash" and proceeded to purchase a treasurer's check payable to the IRS. Sparfven's receipt of a negotiable instrument and his subsequent washing of the Debtor's funds through the purchase of the treasurer's check created an intermediary step between the Debtor's issuance of the check and the IRS' receipt of the funds. As the subsequent transferee, therefore, the IRS could not effectively monitor the source of the Debtor's funds.

We acknowledge that the instant decision may raise equitable concerns, as corporate creditors may appear to have been defrauded by an unscrupulous principal washing the corporation's funds through a negotiable instrument. And we are hesitant to give the unwarranted impression that we approve of a modus operandi whereby a corporate principal,

by diversion of corporate assets, facilely substitutes pursuit by the government on a tax obligation for that of a corporate fiduciary.[5] Yet, we are bound by the directives of the Bankruptcy Code. "In most bankruptcy cases someone will be injured but [C]ongress has balanced equitable considerations under section 550 by distinguishing between initial transferees and subsequent transferees." *In re Southeast Hotel*, 99 F.3d at 157. Congress has "made its own judgment of who should bear the risk of loss in enacting § 550." *Rupp*, 95 F.3d at 944.

*Conclusion*

For the foregoing reasons, the Panel AFFIRMS the Bankruptcy Court's holding that Sparfven was the initial transferee under § 550(a)(1) of the Debtor's fraudulently transferred funds. Accordingly, the IRS is not liable for the funds fraudulently transferred from the Debtor.

---

5. Indeed, such a diversion may lead to a determination of nondischargeability in a

principal's bankruptcy case and even criminal prosecution.