In re PARCEL CONSULTANTS, INC., National Telecommunications, Inc., et al., Debtors.

Official Committee of Unsecured Creditors, Plaintiff,

v.

Guardian Insurance 401, a/k/a/ Guardian Insurance and Annuity Company, Defendant.

Bankruptcy Nos. 99–32125, 99–32133, 99–41890.
Adversary No. 01–3127 RTL.

United States Bankruptcy Court, D. New Jersey.

Dec. 23, 2002.

J. Alex Kress, Riker, Danzig, Scherer, Hyland & Perretti, LLP, Morristown, NJ, for Official Committee of Unsecured Creditors.

Kevin O'Connor, Lum, Danzis, Drasco, Positan & Kleinberg, Roseland, NJ, for Guardian Insurance 401.

## OPINION

RAYMOND T. LYONS, Bankruptcy Judge.

Presently before the court are cross-motions for summary judgment. The Creditors' Committee initiated an adversary proceeding against the defendant, Guardian Insurance and Annuity Company, [GIAC][1] seeking to avoid and recover five

---

**1.** In a recent opinion, the Third Circuit held a creditors' committee did not have standing to file a fraudulent transfer action pursuant to 11 U.S.C. § 544. *Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery (In re Cybergenics Corp.)*, 304 F.3d 316 (3d Cir.2002). Accordingly, the Committee submitted an application to substitute Edward P. Bond, the Trustee of the NTC Trust, as the Plaintiff and real party-in-interest. The application was granted. The *Cybergenics* opinion has since been vacated and a rehearing en

payments made to GIAC pursuant to 11 U.S.C. §§ 547, 549 and 550. GIAC, the investment vehicle for the debtor/employer's 401(k) plan, received five payments, three pre-petition within the preference period and two post-petition. The payments came from funds withheld from the participating employees and from the debtor/employer's matching contribution. GIAC received the payments as a fiduciary under the debtor's 401(k) plan and allocated all funds to accounts for employee/participants in the 401(k) plan. The court holds that since GIAC did not have dominion and control over the funds, it was not an initial transferee within the meaning of 11 U.S.C. § 550; therefore, no recovery may be had against GIAC. Accordingly, GIAC's motion for summary judgment is granted and the Committee's cross-motion is denied.

## *JURISDICTION*

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a) and the Standing Order of the United States District Court for the District of New Jersey dated July 23, 1984 referring all proceedings arising under Title 11 of the United States Code to the Bankruptcy Court. This is a core proceeding concerning the avoidance and recovery of preferences as defined in 28 U.S.C. § 157(b)(2)(F). The following constitutes the court's findings of fact and conclusions of law as required by Fed. R. Bankr.P. 7052.

banc was granted. *Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery (In re Cybergenics Corp.),* 310 F.3d 785 (3d Cir.2002). Since the issue of whether or not a Creditor's Committee has standing to bring an avoidance action is pending before our Circuit Court of Appeals, the court will not address that issue.

## *FACTS*

The debtors, Parcel Consultants, Inc., et al., are engaged in the sale of telecommunications products. They filed a voluntary chapter 11 petition on February 26, 1999.[2] The defendant, GIAC, is licensed by the State of New Jersey to authorize and sell investment products. The Creditors' Committee was appointed on March 19, 1999 and initiated this adversary proceeding on February 23, 2001.

Pursuant to the debtor's confirmed Reorganization Plan, effective August 31, 2002, a trust was formed titled the NTC Creditor Trust, and Edward P. Bond was designated as Trustee. The Committee filed an application seeking to substitute Bond as the plaintiff and real party-in-interest in this adversary proceeding, and the application was granted.

On May 5, 1994, Parcel and GIAC entered into a Group Allocated Variable and Fixed Annuity Contract. Pursuant to the terms of the contract, GIAC provided the investment vehicle for Parcel's employee 401(k) plan. Participating employees chose an amount to be withheld from their paychecks and designated which investment funds their money would be placed into. GIAC provided several funds in which employees could choose to invest. Contributions to the 401(k) plan came from payroll deductions for each employee enrolled in the plan, and through matching contributions made by Parcel on an annual basis. GIAC opened an account for each employee participating in the 401(k) plan. All employee contributions were allocated to specific accounts for each enrolled em-

**2.** The debtor consists of four entities, Parcel Consultants, Inc., National Telecommunications, Inc., Minimum Rate Pricing, Inc., and Discount Call Rating, Inc. Their bankruptcy cases are being jointly administered pursuant to Fed. R. Bankr.P. 1015(b).

ployee. The employer contributions were allocated to each individual account based upon eligibility.

The Committee's Amended Complaint contains four counts. In Counts I and II, the Committee seeks to avoid and recover three pre-petition payments[3] totaling $18,581.42 pursuant to 11 U.S.C. §§ 547 and 550.

The payments were as follows:

| Payment date | Amount | Check No. | Allocation of Payment | |
|---|---|---|---|---|
| 1.) 12/02/98 | $ 2,921.80 | 305725 | Employee Payroll Deduction for pay period ending 11/13/98 | $2,291.80 |
| 2.) 12/17/98 | $11,010.36 [4] | 305866 | Employer Match for 1997 | $5,773.25 |
| | | | Employee Payroll Deduction for pay period ending 11/20/98 | $2,594.67 |
| | | | Employee Payroll Deduction for pay period ending 12/14/98 | $2,462.44 |
| 3.) 02/18/99 | $ 4,649.26 | 306352 | Employee Payroll Deduction for pay period ending 12/18/98 | $2,137.13 |
| | | | Employee Payroll Deduction for pay period ending 1/1/99 | $2,512.13 |

In Counts III and IV, the Committee seeks to avoid and recover two post-petition payments totaling $10,279.79 pursuant to 11 U.S.C. §§ 549 and 550.

| Payment Date [5] | Amount | Check No. | Allocation of Payment | |
|---|---|---|---|---|
| 1.) 02/24/99 | $6,896.37 | 306391 | Employee Payroll Deduction for pay period ending 1/17/99 | $3,482.95 |
| | | | Employee Payroll Deduction for pay period ending 1/31/99 | $3,413.42 |
| 2.) 02/25/99 | $3,383.42 | 306489 | Employee Payroll Deduction for pay period ending 2/14/99 | $3,383.42 |

Of the five payments at issue, all payments, with the exception of the 12/17/98 payment represent employee payroll deductions. The 12/17/98 payment included a payment of $5,773.25 representing the debtor/employer's matching contribution for the plan year 1997. The employer's matching contribution was divided among the plan participants based upon eligibility.[6]

3. All checks were made payable to Guardian Insurance 401(k).

4. Although the check dated 12/17/98 was payable in the amount of $11,010.36, GIAC's records only account for $10,830.36. [$5773.25 + $2594.67 + $2462.44 = $10830.36.]

5. The Committee seeks to recover two checks dated 2/24/99 and 2/25/99 made payable to GIAC, pursuant to 11 U.S.C. § 549, which permits the recovery of post-petition payments. Although these two payments are dated pre-petition, both checks cleared the debtor's account post-petition on 03/02/99. The debtor filed its petition on 02/26/99.

6. Based upon the eligibility of the participating employees, GIAC distributed the employer's matching payment for 1997 into the employees' accounts as follows:

| Employee | 1997 Employer Match | Account Closed |
|---|---|---|
| Aiello, Sara | $ 275.00 | 3/22/00 |
| Arena, Joseph | $ 275.00 | 8/16/00 |
| Bruce, Jennifer | $ 137.50 | 9/14/99 |
| Bucci, Anthony | $ 381.10 | 2/28/00 |
| Davis, Estellita | $ 82.50 | 5/22/98 |
| Debock, Lieven | $ 260.53 | 5/22/98 |
| Dempsey, John J. | $ 68.75 | 7/9/99 |
| Falzone, Elizabeth | $ 37.50 | 4/4/00 |
| Fiasonaro, (Brian) | $1,199.82 | 8/24/99 |
| Fiorendino, Darin | $ 52.50 | 12/7/00 |
| Fletcher, Marvin | $ 27.50 | Active |
| Genova, Rocco | $ 194.62 | Active |
| Johns, Linda | $ 22.50 | 11/7/97 |
| Kenna, (Francis) | $ 265.42 | 1/6/00 |
| McCardle, Joan | $ 30.00 | 9/24/98 |
| Mitchell, Steven | $ 196.25 | 2/7/00 |
| Peterson, Martha | $ 325.00 | 12/7/99 |
| Provenzani, Anthony | $ 962.50 | 12/7/99 |
| Russell, Donald | $ 96.25 | 5/15/98 |
| Salzano, Thomas | $ 416.00 | 6/24/99 |
| Schwaigert, Lisa | $ 329.41 | 7/30/99 |

At issue is whether the committee can avoid the payments made by the debtor to the defendant GIAC pursuant to 11 U.S.C. § 547 and/or § 549, and if avoidable, whether or not the property is recoverable from GIAC pursuant to § 550. Based on the following analysis, the court holds that even if the two categories of property are property of the estate, and if they are avoidable, they are not recoverable from GIAC, as GIAC is not an initial transferee pursuant to 11 U.S.C. § 550.

## CONCLUSIONS OF LAW

### A. Standard of Review: Motion for Summary Judgment

A party is entitled to summary judgment only when the court concludes "that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).[7] A court in considering a summary judgment motion must "view all the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pacitti v. Macy's*, 193 F.3d 766, 772 (3d Cir.1999); *Pa. Coal Assn. v. Babbitt*, 63 F.3d 231, 236 (3d Cir.1995). Since both parties have moved for summary judgment, they agree that there are no material facts in dispute.

### B. Property of the Estate

■ As an initial matter, it is well settled that for the avoiding powers to be invoked pursuant to sections 547 and 549, the property transferred must have been property of the estate. *Begier v. I.R.S.*,

496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990). In this matter, there are two categories of property. The first includes funds withheld from the employees' paychecks and transferred into the 401(k) plan. The second category of property is the employer's matching funds. In a similar case, the Bankruptcy Court in *In re College Bound, Inc.*, 172 B.R. 399 (Bankr. S.D.Fla.1994) held that payment by an employer/debtor to a retirement plan on account of funds previously withheld from employees was not a transfer of property of the estate.

■ At the hearing, this court made a tentative ruling that the employees' contributions were not avoidable, as they were not property of the estate. That issue, however, need not be reached here, since even if the Committee were to establish the elements of 11 U.S.C. § 547 and § 549, the funds cannot be recovered from GIAC pursuant to § 550.

### C. 11 U.S.C. § 550

Section 550 provides, in relevant part,

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

| | | |
|---|---|---|
| Stewart, Beverly | $ 137.50 | 5/28/98 |
| | Total | $5,773.25 |

GIAC's records indicate that of the 22 participating employees who were allocated a portion of the employer's matching payment for 1997, twenty employees have closed their accounts and withdrawn their funds from GIAC. Two of the employees who were allocated funds from the 1997 payment have active accounts with GIAC, Marlvin Fletcher and Rocco Genova.

7. Fed.R.Civ.P. 56 is applicable to adversary proceedings in bankruptcy pursuant to Fed. R. Bankr.Pro. 7056.

■ any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550.

■ Property that is subject to avoidance may be recovered from an initial transferee. Although the bankruptcy code does not define initial transferee, courts addressing the issue have determined that where a party is a "mere conduit" of funds, recovery from that party cannot be had.[8] The rationale behind the "mere conduit" theory was first described by Justice Cardozo.

> The person to be charged with liability, if he has parted before the bankruptcy with title and possession, must have been more than a mere custodian, an intermediary or conduit between the bankrupt and the creditor. Directly or indirectly he must have had a beneficial interest in the preference to be avoided, the thing to be reclaimed.

*Carson v. Federal Reserve Bank*, 254 N.Y. 218, 235–236, 172 N.E. 475 (1930).

■ Expanding upon Judge Cardozo's opinion, courts have further defined a mere conduit as one who does not have control over the subject funds. *In re Anton Noll, Inc.*, 277 B.R. 875 (1st Cir. BAP 2002). The minimum requirement of status as a transferee is dominion over the money or other asset, the right to put the money to one's own purpose. *Id.*

> A mere conduit is not deemed a transferee and merely having the ability to control funds does not render the possessor a transferee. When A gives a

check to B as agent for C, then C is the initial transferee; the agent may be disregarded. In order to be a transferee of the debtor's funds, one must, (1) actually receive the funds, and (2) have full dominion and control over them for one's own account, as opposed to receiving them in trust or as agent for someone else.

*Id.* at 879, quoting, *Rupp v. Markgraf*, 95 F.3d 936, 942 (10th Cir.1996). Defining the terms "dominion and control" the court explained that to have dominion and control means to be capable of using the funds for "whatever purposes he or she wishes, be it to invest in lottery tickets or uranium stocks." *Id.* at 879, quoting, *Bonded Fin. Serv., Inc. v. Eur. Am. Bank*, 838 F.2d 890, 894 (7th Cir.1988).

Although the Third Circuit has not addressed the issue, two bankruptcy courts within our district have adopted the mere conduit theory. In *In re Dairy Stores*, 148 B.R. 6 (Bankr.D.N.J.1992), Judge Gindin held that the Department of Labor was not an initial transferee within the meaning of § 550 where it collected funds from the debtor/employer for wage and overtime violations and distributed those funds to the debtor's employees. The court's holding was premised on the fact that the Department "acted merely as a custodian of the funds and administrator of the payments" and as such was not an initial transferee. *Id.* at 9–10. Additionally, in *In re Fonda Group, Inc.*, 108 B.R. 956 (Bankr.D.N.J.1989), Judge Moore adopted the mere conduit theory, but held that a

---

8. See *Abele v. Modern Financial Plans Services, Inc. (In re Cohen)*, 300 F.3d 1097 (9th Cir.2002)(holding the debtor's husband was not an initial transferee of a cashier's check made payable to a creditor where the husband had possession of the check but could not legally negotiate the check); *In re First Sec. Mortgage Co.*, 33 F.3d 42 (10th Cir.1994)(holding a bank was not an initial transferee when it received money for deposit but did not exercise dominion over such property); *Bonded Fin. Services, Inc. v. European American Bank*, 838 F.2d 890 (7th Cir.1988)(holding bank was not an initial transferee where transferor sent bank a check payable to bank's order with note directing bank to deposit check into account of a third party transferor).

travel agency was an initial transferee because it did exert control over the funds at issue, and was capable of using the funds for its own purposes.

GIAC asserts that it is not an initial transferee within the meaning of § 550, and the court agrees.[9] As an investment vehicle, GIAC provided at least eight different investment options for employees to choose from.[10] Participating employees decided how much they would invest and which investment funds their contributions would be deposited into. Parcel withheld the funds from the employee's payroll and submitted a payment and a statement of withholdings to GIAC. When GIAC received each payment from Parcel, GIAC distributed the funds in accordance with the contract.[11]

GIAC could not exert dominion and control over the funds because it was bound by the contract terms, which granted control to the individual employees participating in the plan. Moreover, GIAC was not capable of using the funds its own their purposes. It was obligated to deposit the funds at the direction of the employee participants, and not at its own discretion.

### CONCLUSION

Based on the terms of the contract between the debtor and GIAC, GIAC did not have control over the funds to use as its own, and therefore cannot be an initial transferee pursuant to § 550. Even if the Committee were to establish the requisite elements of § 547 and § 549, the five payments could not be recovered from the defendant. Accordingly, the defendant's motion for summary judgment is **GRANTED.** The committee's cross-motion for summary judgment is **DENIED.**

---

**9.** In post hearing submissions, the Committee requested further discovery on the mere conduit theory. The Committee did not, however, suggest what if any discovery would enable them to refute GIAC's status as a custodian of the funds at issue, therefore, the Committee's request for further discovery is denied.

**10.** For example, employee, Joseph Arena contributed $100.00 from his paycheck for the pay period ending 11/13/98. His $100.00 contribution was divided among four different investment funds of his choosing.

**11.** The payment dated December 2, 1998 representing payroll deductions was disbursed into each employee's individual account based upon the amount designated to be withheld by each employee. The account of employee Anthony Bucci shows that $69.42 was withheld from his paycheck for the pay period ending 11/13/98 and $69.42 was deposited into his 401(k) account on 12/24/98. The same can be seen for each employee participating in the plan.