**In re BEACONVISION INCORPORATED, Debtor.**

**Michael S. Askenaizer, Chapter 7 Trustee, et al., Plaintiffs,**

**v.**

**Michael A. Wyatt, et al., Defendants.**

**Bankruptcy No. 04–10528–MWV.**

**Adversary No. 05–1084–MWV.**

United States Bankruptcy Court, D. New Hampshire.

April 6, 2006.

J. Daniel Marr, Esq., Hamblett & Kerrigan, P.A., Nashua, NH, for Plaintiffs.

Jennifer Rood, Esq., Bernstein, Shur, Sawyer & Nelson, P.A., Manchester, NH, for Defendant Gordon Properties, Ltd.

## *MEMORANDUM OPINION*

MARK W. VAUGHN, Chief Judge.

The Plaintiffs' amended complaint alleges fourteen counts against nine defendants (and a tenth subsequently added). Presently before the Court is the Plaintiffs' motion for summary judgment on Count VII, which is a fraudulent transfer claim against defendant Gordon Properties, Ltd. ("Gordon"). Gordon objected and upped the ante with a cross-motion for summary judgment on Count VII and a motion for summary judgment on Count V, a count against Gordon and other defendants for conversion. The Plaintiffs objected to both motions. The Court held a hearing on January 13, 2006, after which the Court took the matters under advisement and agreed to accept supplemental memoranda of law from each party. This opinion addresses all three motions for summary judgment.

### *JURISDICTION*

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

### *BACKGROUND*

BeaconVision Incorporated ("the Debtor") was a New Hampshire corporation in the business of software development and consulting. Gordon is a Texas corporation in the construction business. The Debtor negotiated with Weller Financial Services ("Weller") to procure a $2,000,000 loan. As part of the deal, the Debtor was to pay $200,000 for the purchase of an insurance binder to support the $2,000,000 loan. To raise the capital, the Debtor sold stock to three of its officers for a total of $200,000. In April 2003, the Debtor transferred $200,000 to an escrow account with New Century Abstract ("New Century"), Weller's escrow agent. The escrow agreement's instructions, entitled "Lender's Escrow Instructions," stated that the escrowed funds were to be disbursed only upon "receipt of Insurance Binder issued by an 'A' rated or better Insurance Company for an amount not less than $2,000,000," and in the event that the insurance binder did not issue, New Century was obligated to return the $200,000 to the Debtor. The instructions also contain the following: "These instructions can only be modified with the advanced written approval of Weller Financial Resources, Inc."

Efforts by Weller to secure the loan and the insurance binder were apparently underway for several months following the Debtor's transfer of the funds. The closing date of the loan continued to be pushed back, and at some point CSI/The Stallings Group ("CSI") became involved and Weller and CSI informed the Debtor that CSI would be loaning the $2,000,000 to the

Debtor. Although neither the loan nor the insurance binder materialized, the $200,000 was not returned to the Debtor. The $200,000 had been transferred by Weller from the escrow account to three entities unrelated to the Debtor. These transfers occurred in April 2003, soon after the Debtor deposited the funds into the escrow account. Gordon, one of the three receiving entities, received $150,000 as a non-refundable, earnest money deposit pursuant to a home-building contract between it and Christopher Stallings, another defendant named in the Plaintiff's complaint. The transaction receipt for the wire transfer from New Century to Gordon contained the notation "REF: BEACONVI-SON" [sic].

## DISCUSSION

Under Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "Genuine," in the context of Rule 56(c), "means that the evidence is such that a reasonable jury could resolve the point in favor of the nonmoving party." *Rodriguez–Pinto v. Tirado–Delgado*, 982 F.2d 34, 38 (1st Cir. 1993) (quoting *United States v. One Parcel of Real Prop.*, 960 F.2d 200, 204 (1st Cir. 1992)). "Material," in the context of Rule 56(c), means that the fact has "the potential to affect the outcome of the suit under the applicable law." *Nereida–Gonzalez v. Tirado–Delgado*, 990 F.2d 701, 703 (1st

Cir.1993). Courts faced with a motion for summary judgment should read the record "in the light most flattering to the nonmovant and indulg[e] all reasonable inferences in that party's favor." *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994).

### Count VII: Fraudulent Transfer

■ The Trustee argues that the transfer is avoidable pursuant to section 548(a)(1).[1]

(a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

. . . .

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation[.]

11 U.S.C. § 548(a)(2000). It is undisputed that the transfer was made within one year of the petition date, that the Debtor received less than reasonably equivalent value, and that the Debtor was insolvent at the time of the transfer. It is disputed whether the $200,000 was "an interest of the debtor in property." The phrase "interest of the debtor in property" "is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *Begier v. Internal Revenue Serv.*, 496 U.S. 53, 58, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990).[2]

---

1. Unless otherwise noted, all statutory section references herein are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, *et seq.*

2. The Supreme Court read the phrases "property of the debtor" and "an interest of the debtor in property" "coextensive[ly]" and "[f]or guidance" looked "to § 541, which delineates the scope of 'property of the estate.'"

■ The three officers paid a total of $200,000 to the Debtor in return for shares of the Debtor's common stock. Pursuant to a "Common Stock Purchase Agreement" each purchasing officer had "the option of holding the common stock purchased as indicated in this Agreement or selling the common stock back to the Corporation [upon consummation of the $2,000,000 loan]." Thus, in the event that the loan failed to materialize, the officers would continue to own the shares they purchased. The agreement does not contemplate the return of the funds to the officers if the loan fell through. Additionally, the escrow instructions provide that if the loan binder was not issued, the funds would be returned to the Debtor, not to the three officers.

When the officers purchased the stock, the $200,000 became property of the Debtor. Had the Debtor filed for bankruptcy protection before transferring the funds to the escrow account, the funds would have become property of the Debtor's bankruptcy estate. As property of the estate, the funds are "an interest of the debtor in property" as that phrase is used in section 548. The remaining conditions of section 548(a)(1) having been satisfied, the Court holds that the transfer from the Debtor is avoidable pursuant to section 548(a)(1).

However, a trustee's ability to recover a transfer avoided under section 548 is subject to the limitations of section 550:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

(b) The trustee may not recover under subsection (a)(2) of this subsection from—

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or

(2) any immediate or mediate good faith transferee of such transferee.

11 U.S.C. § 550(a) and (b)(2000).

■ An initial transferee is strictly liable under section 550(a)(1); a "trustee 'may always recover from the initial transferee regardless of [that transferee's] good faith, value, or lack of knowledge of the voidability of the transfer.'" *In re Anton Noll, Inc.*, 277 B.R. 875, 878 (1st Cir. BAP 2002) (alteration in original) (quoting *Rupp v. Markgraf*, 95 F.3d 936, 938 (10th Cir. 1996)). Mediate or immediate transferees, however, who took for value, in good faith, and without knowledge of the voidability of the transfer are protected by section 550(b)(1). Although the First Circuit has yet to address the issue of transferee status, courts "have uniformly followed" the test set forth in *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890 (7th Cir.1988). *In re Anton Noll, Inc.*, 277 B.R. at 878–79. That test, known either as the "dominion and control" test or the "conduit" test, states that "the minimum requirement of status as a 'transferee' is dominion over the money or other asset, the right to put the money to one's own purposes." *Bonded*, 838 F.2d at 893. Since *Bonded*, most courts have stressed that the requisite dominion and

control is *legal* dominion and control. *E.g., In re Pony Express Delivery Servs., Inc.,* 440 F.3d 1296, 1300–01 (11th Cir.2006); *In re Anton Noll, Inc.,* 277 B.R. at 879. A party lacking dominion and control is considered to be a "mere conduit." *In re Hurtado,* 342 F.3d 528, 534 n. 2; *In re Circuit Alliance, Inc.,* 228 B.R. 225, 233 (Bankr.D.Minn.1998) ("Generally, 'mere conduits' hold transferred funds via escrow, trust, or deposit, and do so only in the status of commercial or professional intermediaries for the parties that actually hold or receive a legal right, title, or interest.").

The Plaintiff argues that Gordon is the initial transferee of the funds, and that New Century and Weller are mere conduits. Gordon argues that Weller is the initial transferee and that Gordon is an immediate transferee of the funds and, as such, shielded by section 550(b)'s good faith protection of immediate transferees. For clarity's sake, the Court finds that New Century, the escrow agent, is a mere conduit of the funds. New Century, as an agent of Weller, had no legal right to use the escrowed funds for any purpose except to follow the escrow instructions. As for Gordon, Gordon is certainly a transferee, but whether Gordon is the initial transferee depends on Weller's status. The circumstances surrounding the release of the escrowed funds are in need of clarification. For instance, it is unclear which entity or entities authorized the release of the funds. The facts of the transfer are material, and there is genuine dispute regarding what happened. Based on the facts presented, neither party is entitled to a judgment as a matter of law. The Plaintiff's motion for summary judgment and Gordon's cross-motion for summary judgment are denied.

## Count V: Conversion

Gordon seeks summary judgment on Count V, a count in which the Plaintiff argues that Gordon converted the $150,000. "The essence of conversion is the exercise of dominion or control over goods which is inconsistent with the rights of the one entitled to their possession." *Pac. & Atl. Shippers, Inc. v. Schier,* 109 N.H. 551, 258 A.2d 351, 353 (1969). A party can be liable for conversion without having "a hostile intent, or a desire to do any harm." *Thompson v. Forest,* 136 N.H. 215, 614 A.2d 1064, 1067 (1992). Similarly, good faith does not rescue a party from liability, *Pac. & Atl. Shippers, Inc.,* 258 A.2d at 353, but "[t]he tortfeasor must have known that his conduct was *substantially certain* to result in injury." *Thompson,* 614 A.2d at 1068 (emphasis in original).

When Gordon received the funds via wire, it also received a transaction receipt via fax. On this receipt, under the heading "Originator Bank Info," the following is typed: "REF:BEACONVISON" [sic]. Based on this receipt, the Trustee argues that Gordon knew or should have known that the funds were not the property of Christopher Stallings and that Gordon should have investigated the source of the funds. According to the affidavit of Gary M. Gordon, a limited partner of Gordon, nobody at Gordon noticed the word "BEACONVISON" [sic] on the receipt.

As stated above, little has been revealed concerning the transfer of funds from the escrow account to Gordon. Reading the record in the light most favorable to the Plaintiff, the nonmoving party, and making "all reasonable inferences in that party's favor," the Court finds that whether Gordon knew that it was receiving funds in a manner inconsistent with the rights of the Debtor is an outstanding issue of material fact. *Maldonado–Denis v. Castillo–Rodri-*

*guez*, 23 F.3d at 581. Gordon's motion for summary judgment is denied.

### Conclusion

The Plaintiff's motion for summary judgment is denied, and Gordon's cross-motion for summary judgment on Count VII as well as its motion for summary judgment on Count V are denied. This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order consistent with this opinion.